UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
UNITED STATES OF AMERICA,

    -against-                               **MEMORANDUM AND ORDER**
                                            Case No. 07-CR-841 (FB)
THOMAS FARESE and PAT TRUGLIA,

                 Defendants.
-----------------------------------------------------x

**BLOCK, Senior District Judge:**

Pat Truglia was convicted of one count of money laundering. The government's theory was that Truglia agreed to accept a total of $47,000 in cash from a cooperating witness ("CW") and to write personal checks for the same amount back to the CW, knowing that the cash was proceeds of the CW's loansharking operation. Truglia has moved for a judgment of acquittal pursuant to Rule 29 and for a new trial pursuant to Rule 33. For the following reasons, the motions are denied.

**A. Rule 29 Motion**

Truglia argues that he is entitled to a judgment of acquittal because the government failed to offer sufficient evidence of (1) the knowledge element of money laundering and (2) venue.

*1. Knowledge*

As reflected in the jury instructions, the government was required to prove that Truglia knew that the cash he received from the CW was proceeds of a specific illegal activity, namely, loansharking.[1] Truglia argues that the government failed to offer sufficient evidence of this element, instead relying on improper expert testimony to demonstrate his state of mind.

When the CW delivered the cash to Truglia, he stated: "I might be getting, you know, shylock money – I might be getting more." Gov't Ex. 300.[2] Truglia responded, "Okay. Whatever you need, I'm there for you." *Id.* A jury could reasonably infer from Truglia's nonchalant response and demeanor that he understood what "shylocking" meant.

Moreover, the government introduced recordings of an earlier conversation among Truglia, his brother and the CW. During that conversation, the CW stated that he needed help finding a certain "Iggy" to "try to collect some money." Gov't Ex. 303. Truglia's brother offered to help locate Iggy, stating that "they're not going to the cops or nothing." *Id.* Later in the conversation the CW asked if the

---

[1]To be precise, because a sting operation was involved, the government was required to prove that Truglia *believed* the cash to be proceeds of loansharking.

[2]The CW recorded the conversation, which was played for the jury in lieu of having the CW testify.

Truglia brothers knew the whereabouts of "Frankie Tapp" because "he owes us all money." *Id.* The jury could reasonably infer from those comments that Truglia knew that the CW ran a loansharking operation and, further, that he believed the $40,000 to be proceeds of that operation.

With respect to "improper" expert evidence, Truglia misstates the record. An expert did testify as to the usual meaning of "shylocking" in Mafia circles, but offered no opinion as to whether Truglia understood that meaning.

## 2. *Venue*

Venue for a money laundering prosecution is proper in any district where any portion of the financial transaction occurred. *See* 18 U.S.C. § 1956(i)(1)(A). A transfer of funds "by wire or any other means" constitutes a financial transaction. The government's theory of venue was that the check written by Truglia to the CW was delivered to an address in Staten Island.

Truglia argues that the government failed to prove that the check was received in Staten Island. To the contrary, the government offered testimony from a FedEx representative that Truglia sent a FedEx envelope to the address in Staten Island, and that it was delivered at 7:48 a.m. the following day. The envelope contained a $40,000 check drawn on Truglia's account and payable to the CW. The CW later told Farese that Truglia had done a "good job" laundering the

$40,000. Gov't Ex. 302. This was more than sufficient to prove venue by a preponderance of the evidence.³

**B. Rule 33 Motion**

In support of his motion for a new trial, Truglia argues that he was deprived of a fair trial because the government (1) introducing unduly prejudicial evidence regarding organized crime, (2) attempted to shift the burden of proof during its rebuttal summation, and (3) failed to give notice of "other bad acts" evidence under Federal Rule of Evidence 404(b).

*1. Organized Crime Evidence*

The government offered expert evidence regarding the organization and operation of organized crime families. Although the government argues that the evidence was admissible against Truglia, it was principally used to explain the role of Farese—alleged to be a consigliere in the Colombo family—in supervising and approving the money laundering agreement between the CW and Truglia.

Despite the Court's offer, Truglia did not request an instruction limiting the jury's consideration of the organized crime evidence to Farese. In addition, the jury acquitted Farese. This demonstrates that the jury was able to process the

---

³There is no merit to Truglia's contention that the standard of proof should be beyond a reasonable doubt. *See United States v. Coplan*, 703 F.3d 46, 77 (2d Cir. 2012) (restating the burden of proof as preponderance of the evidence).

evidence as relevant to explain Farese's role without allowing the implications of mob membership to color its consideration of the specific crimes charged.

## 2. *Burden of Proof*

Truglia argues that the government shifted the burden of proof by arguing that he could have called the CW to testify. Truglia's counsel argued extensively in his summation that the jury should draw an adverse inference against the government because it chose to rely on recorded converations rather than the CW's live testimony. In rebuttal, the government stated that the CW was equally available to both sides. The government's argument was accurate and appropriate. *See United States v. Caccia*, 122 F.3d 136, 139 (2d Cir. 1997) ("[W]here a witness is equally available to both sides, but is not called by either side[,] the court has discretion to . . . give no [missing witness] instruction and leave the entire subject to summations."). Any implication that Truglia bore any burden of producing the CW was refuted by the government's acknowledgment elsewhere in its rebuttal that the defendants "don't have to put up any witnesses," Tr. at 1033, as well as the Court's instructions to the jury. *See id.* at 1070 ("As I have told you, a defendant does not have to produce any witnesses or evidence.").

### 3. *Rule 404(b) Notice*

Truglia argues that the government failed to provide Rule 404(b) notice regarding his involvement in the CW's attempts to collect debts and unfairly mentioned it for the first time in its rebuttal summation.[4] The government gave pretrial notice that it intended to elicit the conversations demonstrating Truglia's knowledge of the CW's loansharking operation; those same conversations supplied the evidence that Truglia participated in the operation. The argument that Truglia must have known about the CW's loansharking operaiton because he participated in it was raised in the government's initial summation, thus providing an opportunity for Truglia's counsel to respond in his summation.

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　 /S/　　　　　　　　
　　　　　　　　　　　　　　　　　　FREDERIC BLOCK
　　　　　　　　　　　　　　　　　　Senior United States District Judge

Brooklyn, New York
May 22, 2014

---

[4]Truglia does not dispute that the evidence was admissible to prove his knowledge.